UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**AMEILA CARDENAS,**

    **Plaintiff,**

v.                                                      Case No.  2:11-cv-653-FtM-36SPC

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**
_____/

## ORDER

This matter comes before the Court on Plaintiff Ameila Cardenas' Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on November 10, 2011. A Consent Form (Doc. #8) was signed by the Parties indicating their agreement for jurisdiction in this matter to be exercised by the United State Magistrate Judge and filed on February 10, 2012. The Parties' consent was approved by the District Court on March 2, 2012. (Doc. #9). The Plaintiff filed her Memorandum of Law in support of the Complaint (Doc. #14) on September 12, 2012. The Commissioner subsequently filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on November 8, 2012. Thus, the Motion is now ripe for review.

## FACTS

### *Procedural History*

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on August 26, 2009. (Tr. 10). The claim was denied, initially, on October 9, 2009, and

again upon reconsideration on January 12, 2010. (Tr. 10). Plaintiff then filed a request for hearing on January 27, 2010. (Tr. 10). This request was granted, and on February 11, 2011, Administrative Law Judge (ALJ) M. Dwight Evans held a hearing, at which Plaintiff testified. (Tr. 10). Following the hearing and after considering the record, the ALJ denied Plaintiff's application on May 19, 2011. (Tr. 12). Thereafter, Plaintiff appealed the decision to the Appeals Council, which affirmed the ALJ's ruling on September 13, 2011, by denying review. (Tr. 1). Having exhausted all administrative remedies, Plaintiff filed this Complaint with the Court on November 11, 2011. Thus, the case is ripe for review under 42 U.S.C. § 405(g).

*Plaintiff's History*

Plaintiff testified that she last worked on August 26, 2009, the date of the alleged onset of disability, as a school clerk. (Tr. 13). Plaintiff, born August 13, 1959, testified that she is married and has a high school education. (Tr. 13). She stated that she "cannot work because she has a lot of pain" due to back and neck conditions, and filed for disability benefits as a result. (Tr. 13).

*Medical History*

The medical evidence shows that Plaintiff has a history of back problems. (Tr. 14). Beginning in December 2004 and continuing through 2008, Plaintiff visited several doctors with complaints of neck and back pain as well as pain in the extremities. (Tr. 14). Medical imagery tests were performed, showing various pathologies in Plaintiff's spine. (Tr. 14). In June 2008, Joseph Kandel, M.D., prescribed Advil three times daily for pain and Zanaflex nightly for spasms. (Tr. 14).

On July 27, 2009, Plaintiff went to the emergency room with complaints of constant neck pain. (Tr. 14). She stated that her symptoms began two weeks before the emergency room visit, progressively becoming worse, and necessitating the visit. (Tr. 14). Plaintiff described increased

2

pain on the right side of her neck, especially present with rotational movement, and radiated to her right arm. (Tr. 14). A CT scan revealed multi-level spinal canal stenosis, for which she was prescribed Percocet, Naprosyn, and Skelaxin. (Tr. 14).

A physical exam conducted on August 13, 2009, by Plaintiff's treating physician, Fariba Ghazizadeh, M.D., showed that Plaintiff had a significantly decreased range of motion in her neck, accompanied by severe pain, as well as a decreased range of motion of her shoulders, more prevalent on the right than the left side. (Tr. 15). A MRI scan taken on August 15, 2009, showed central and left paracentral disc bulge, loss of intervertebral height, and bilateral neuroforaminal narrowing at C6-7. Plaintiff underwent massage therapy with Vivian Ebert, M.D., from August 17, 2009 to August 28, 2009. (Tr. 15). On referral from Dr. Ghazizadeh, Plaintiff also consulted with Michael D. Lusk, M.D., on August 13, 2009 and August 19, 2009. Dr. Lusk noted that Plaintiff's motor examination was 5/5, with gait and station within normal limits, with tandem walking completed without difficulty, and that Plaintiff reported no numbness or weakness. (Tr. 15).

Several weeks later, on September 16, 2009, Plaintiff visited Michael F. Fink, M.D., a neurologist, with complaints of neck, thoracic, and leg pain, as well as some numbing in the arms and reported that she had difficulty opening jars. (Tr. 15, 217). A physical examination showed tender cervical spine with moderately reduced range of motion, mild scoliosis in the thoracic spine and muscle spasm. (Tr. 15). Dr. Fink found no motor weakness or sensory loss, and concluded that Plaintiff's balance, gait and coordination were all intact. (Tr. 15). Dr. Fink diagnosed myalgia and myositis, and prescribed Excedrin Extra Strength, three tablets a day, and Flexeril once a day. (Tr. 15).

On September 25, 2009, Dr. Ghazizadeh, completed a medical request form for Cigna, Plaintiff's short term disability provider, stating that due to cervical disc bulging, Plaintiff was unable to move her neck and therefore could not perform her work duties. (Tr. 15). At the same visit, Dr. Ghazizadeh also noted that Plaintiff could walk on her heels and toes, squat as long as she held onto something, and had no problem with grip or dexterity movements. (Tr. 15). Further, Dr. Ghazizadeh opined that Plaintiff's sensory and motor strength in her upper extremities were within normal limits. (Tr. 15). Later, another MRI scan was conducted on April 7, 2010, showing various abnormalities of the cervical spine and an X-ray revealed mild pathologies in the thoracic spine. (Tr. 15).

*Administrative Law Judge's Decision*

After careful consideration of the record, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 26, 2009, through the date of the ALJ's decision. (Tr. 17). To reach this conclusion, the ALJ conducted the five-step evaluation process for determining disability pursuant to 20 C.F.R. 404.1520(a). First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 12). Next, the ALJ found that Plaintiff had not engaged in substantial gainful employment since August 26, 2009, the alleged onset date of disability. (Tr. 12). Third, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical spine with a bulging disc and multi-level disc bulging of the thoracic spine. (Tr. 12). The ALJ classified both of these impairments as severe impairments. (Tr. 12). In the next step of the inquiry, the ALJ did not find that Plaintiff's impairments, either combined or individually, meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). The ALJ found that from the alleged onset date through the date of the decision, Plaintiff had a residual functioning

capacity to perform a full range of light work as defined in 20 C.F.R. 404.1567(b). (Tr. 16). The ALJ found that the Plaintiff was capable of performing past relevant work as a clerical secretary. (Tr. 16).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm., 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a). The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the ALJ's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    *Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    *Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
    *Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

reviewer finds that the evidence preponderates against the ALJ's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the ALJ's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the ALJ without remanding the case. 42 U.S.C. § 405(g)(sentence four). The district court will reverse an ALJ's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the Plaintiff unable to do his or her previous work, or any other substantial

gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The Plaintiff asserts that the ALJ erred as follows: (1) the ALJ failed to give proper weight to the medical opinion of the treating physician, Dr. Ghazizadeh; (2) the ALJ failed to consider the effect Plaintiff's depression had on her ability to work; (3) the ALJ failed to consider the physical and mental demands of Plaintiff's past work; (4) and the ALJ's decision that Plaintiff can perform a full range of light work is not supported by substantial evidence.

*Whether Substantial Evidence Supports the Administrative Law Judge's Decision and Whether the ALJ Applied the Correct Legal Standards*

**1.  Whether the ALJ gave proper weight to the treating physician, Dr. Ghazizadeh**

Plaintiff argues that the ALJ failed to give proper weight to the testimony of the treating physician, Dr. Ghazizadeh, also neglecting to state what weight he gave Dr. Ghazizadeh's medical opinion, and his reasons for doing so. (Doc. #14, p. 11). Defendant, on the other hand, argues that the ALJ properly weighed Dr. Ghazizadeh's testimony, even though the ALJ did not state in his decision what weight he gave to the opinion. (Doc. #15, p. 12). Defendant maintains that failure to state the weight given to the treating physician's opinion is harmless error. (Doc. #15, p. 12)

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439-41; Sabo v. Comm. of Soc. Sec., 955 F.Supp. 1456, 1462 (M.D. Fla. 1996).  If a treating physician's opinion on the nature and severity of a plaintiff's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  On the other hand, the ALJ may discount a treating

physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a plaintiff's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984). Furthermore, should the ALJ discount the treating physician's opinion, he must clearly state what weight he gives the opinion and articulate his reasons for giving less weight to the opinion. Failure to do so is reversible error. Morrison, 278 F. Supp. at 1334.

If a treating source's opinion on the nature and severity of an impairment is well-supported by objective evidence and is not inconsistent with the other substantial evidence in the record, the ALJ is to give it controlling weight. Miller v. Barnhart, 182 F. Appx. 959, 964 (11th Cir. 2006). If the ALJ does not give a treating physician's opinion controlling weight, "[t]he

ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id. quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion). However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

If an ALJ discounts a treating physician's opinion on the grounds that it was based upon the claimant's self-reports and not supported by objective evidence, the ALJ must support this determination with articulated facts. Shuren v. Comm. of Soc. Sec., 2012 WL 4194665 at *9 (M.D. Fla. Sept. 19, 2012). An ALJ's failure to state with particularity why he has given less weight to the treating physician is reversible error unless it is deemed a harmless error.[2] A harmless error is an error that would not affect the end result, such that remand for correction of the error would not change the final outcome of the case. Id. at *10.

In this instance, the ALJ described the medical evidence of record from Dr. Ghazizadeh's examination and reports. (Tr. 14-15). The ALJ noted in Dr. Ghazizadeh's report that Plaintiff complained of neck pain and upper back pain. (Tr. 14). The ALJ also noted Dr. Ghazizadeh's physical examination of Plaintiff on August 13, 2009, stating that Plaintiff had "significantly decreased range of motion to her neck with severe pain, and marked decreased range of motion of the shoulders, right greater than left." (Tr. 15). The ALJ noted Dr. Ghazizadeh's report completed on September 19, 2009, which stated that Plaintiff was "unable to perform any work

---

[2] The Eleventh Circuit has applied the harmless error doctrine in social security cases. See, e.g., Diorio v. Heckler, 721, F.2d 726, 728 (11th Cir. 1983); Smyre v. Astrue, 2011 WL 307694 at *4 (M.D. Fla. Jan. 28, 2011); . Heatly v. Comm. of Soc. Sec., 382 F. Appx. 823, 825 (11th Cir. 2010). As the Court in Ware v. Schweiker stated, "[j]udicial review is not for the purpose of exacting punctilio but to assure that the Secretary's determination does not trespass the statute." 651 F.2d 408, 413 (5th Cir. 1981).

9

duties." (Tr. 15). However, in evaluating Plaintiff's claim, the ALJ found that Dr. Ghazizadeh's findings relied quite heavily on the subjective complaints of the Plaintiff, rather than on objective medical fact. Specifically, the ALJ stated:

> The claimant's treating physician opined that the claimant is unable to perform any work duties due to the inability to move her neck. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. There is no evidence that the claimant's limitations are greater than those determined in this decision.

(Tr. 16).

The ALJ, in this instance, did not state how much weight he gave to the treating physician's opinion, nor did he cite to substantial evidence in the record to support his position that Dr. Ghazizadeh's testimony was based on Plaintiff's subjective reports. Without more, the Court cannot determine what weight the ALJ gave to Dr. Ghazizadeh because a determination that the treating physician relied on the Plaintiff's self-reported subjective complaints is not supported by substantial evidence in the record. Shuren v. Commissioner, 2012 WL 4194665 * 9 (M.D. Fla. September 19, 2012) (holding that ALJ's decision was not supported by substantial evidence where the ALJ merely states the treating physician relied on self-reported statements rather that objective medical evidence in the record).

The ALJ's failure to indicate the weight given to Dr. Ghazizadeh's opinion constitutes reversible error. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error). Thus, the decision of the Commissioner is due to be remanded for a determination of the weight given to Dr. Ghazizadeh's opinion. On remand, the ALJ must explicitly state what weight he

gives to Dr. Ghazizadeh's opinion and provide articulated facts from the medical record that provide substantial support for the weight he gives to give Dr. Ghazizadeh's opinion.

### (2) Whether the ALJ's Residual Functional Capacity (RFC) assessment was supported by substantial evidence

Secondly, Plaintiff argues that the ALJ's RFC is not based on substantial evidence. (Doc. 14, p. 16-17). Specifically, Plaintiff argues that in determining Plaintiff's RFC that: (a) the ALJ failed to consider the effect Plaintiff's depression had on her ability to work; (b) the ALJ failed to consider the physical and mental demands of Plaintiff's past work; (c) and the ALJ's decision that Plaintiff can perform a full range of light work is not supported by substantial evidence. (Doc. #14, p. 3).

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and, based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. §404.1545(a)). These impairments, however, must first be demonstrated in the second step of the evaluation by the Plaintiff, who bears the burden of proof that she suffers from severe impairments or a combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient

severity to prevent him from engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)). The court's review of the ALJ's decision is limited, and the court must affirm the ALJ's ruling if it is supported by substantial evidence. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). As such, the Court will examine each above claim under this analysis.

### (a) *Whether the ALJ properly considered Plaintiff's alleged depression in determining her ability to work*

Plaintiff argues that the ALJ failed to consider the effect of the Plaintiff's depression on her ability to work in assessing her RFC. Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff can perform her past relevant work as a clerical secretary. The ALJ found that:

> The claimant has past relevant work as a clerical secretary, which is described as light, semi-skilled work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(Tr. 16-17).

In this case, Plaintiff alleges that the ALJ failed to incorporate her claims of depression into his assessment of her RFC under Social Security Ruling (SSR) 96-9p. Specifically, Plaintiff claims that the ALJ failed to discuss the Plaintiff's depression at all under the "function-by-function" analysis. (Doc. #14, p. 14).

Plaintiff is correct that SSR 96–8p requires the ALJ to first assess a claimant's "work-related abilities on a function-by-function basis." SSR 96–8p, 1996 WL 374184 at *1. However, SSR 96–8p also provides "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Id. Additionally, the claimant bears the

12

burden of proving her disability and is responsible for providing medical evidence to support her allegations. Ellison v. Barnhart, 355 F.3d 1272, 1276 (citing 20 C.F.R. § 416.912(c)).

Plaintiff failed to carry the burden of proof regarding her alleged depression, insofar as she did not demonstrate a medical diagnosis of depression and did not include depression in her claims for disability. Specifically, Plaintiff failed to list depression among her conditions in her Disability Report filed in September 2009 and in her Supplemental Disability Reports in December 2009 and February 2010. (Tr. 114, 146, 162). Plaintiff states that Dr. Ghazizadeh reported that Plaintiff was very depressed; however, Dr. Ghazizadeh stated that this was due to Plaintiff's frustration with her neck pain. (Tr. 308).

Despite the fact that Plaintiff failed to carry her burden of proof regarding her alleged depression, the ALJ considered the Plaintiff's alleged depression, noting her testimony in his decision. (Tr. 13). At the hearing, the ALJ asked Plaintiff about her symptoms that were related to her depression; Plaintiff stated that she did not eat a lot and was "very emotional" because of the way that her "life has become." (Tr. 33). However, the ALJ noted the Plaintiff's testimony regarding her alleged depression in his opinion, stating that she is "very emotional" and that "every time she thinks about the pain she is going through, she gets very upset and cries." (Tr. 13). The ALJ determined that there was no depression. As such, there was no need for the ALJ to consider depression in the RFC determination.

### (b) *Whether the ALJ properly considered the mental and physical demands of the Plaintiff's past work*

The Plaintiff argues the ALJ failed to properly consider the mental and physical demands of the Plaintiff's past work in determining Plaintiff's RFC assessment. Defendant argues that the medical records, together with opinion evidence, support the ALJ's findings.

In his decision the ALJ found

> [t]he claimant has past relevant work as a clerical secretary, which is described as light, semi-skilled work. In comparing the claimant's residual capacity with the physical demands and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(Tr. 16-17). The ALJ decided this case at Step 4, when he made a determination that the Plaintiff could return to her past relevant work as a clerical secretary. (Tr. 16-17). This review involved the assessment of the claimant's residual functional capacity and requires consideration of the physical and mental demands of her former work. Turner v. Astrue, 2009 WL 804676 *6 (M.D. Fla. March 26, 2009). In this regard, "the ALJ has the duty to fully investigate and make explicit findings as to the physical and mental demands of the claimant's past relevant work and to compare that with what the claimant herself is capable of doing before the ALJ determines that she is able to perform her past relevant work." Id. (citing Nimick v. Sec'y of Health & Human Services, 887 F.2d 864, 866 (8th Cir.1989) (referencing SSR 82-62 and 20 C.F.R. § 404.1520(e)). While the claimant bears the burden at this step of demonstrating an inability to return to her past relevant work, the ALJ has a concomitant duty to develop a full record in this regard. Turner, 2009 WL 804676 at *6 (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n. 3 (11th Cir.1990)).

A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Turner, 2009 WL 804676 at *6 (referencing SSR 82-62 *3; SSR 82-61). And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT and from Plaintiff's own descriptions of the jobs demands. Turner, 2009 WL 804676 at *6 (referencing SSR 82-61 at *2).

While the Plaintiff contends the ALJ did not review the physical demands of her past work as a clerical secretary for the school system, the Plaintiff reported her work as a secretary involved lifting no more than twenty (20) pounds and frequently lifting less than ten (10) pounds, with frequent walking and standing when assisting visitors and sitting when not that busy. (Tr. 125-126). Regarding her work she said she could no longer perform her duties because of pain, she could not sit for very long, could not type, nor be on the telephone for long periods of time. (Tr. 13). Where it is determined that a claimant can perform her past job as she performed it, the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Turner, 2009 WL 804676 at *6 (referencing SSR 82-63 at *3); *see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work).Thus, the Plaintiff's definition of her job duties as requiring sitting, typing, and answering the telephone and assisting visitors and only light lifting and some walking is sufficient for the ALJ to review the physical demands of her past relevant work. The Plaintiff presented no medical evidence to the ALJ that she suffered from any mental problems that would affect her ability to perform her past relevant work as a clerical secretary.

The ALJ then reviewed the evidence related to the physical demands of the Plaintiff's past work and properly made a comparison of the Plaintiff's physical demands of the Plaintiff's past relevant work with his RFC determination and found that she could perform the duties of her past relevant work. The ALJ supported this determination with medical evidence from the record citing to Dr. Ghazizadeh's opinion which found that Plaintiff's sensory and motor strength in both upper extremities were within normal limits, that she could walk on heels and toes, squat while holding on to something, and that she had no problems with grip strength or

fine dexterity movements. (Tr. 15). ALJ also noted that a month before Dr. Ghazizadeh's physical exam, Dr. Lusk examined Plaintiff, reporting, "motor examination was 5/5, and gait and station were within normal limits. Tandem walking was done without difficulty." (Tr. ). The ALJ also relied on the opinions of the State Agency Physicians who opined that the Plaintiff was capable of performing light work. The Plaintiff presented no evidence of mental impairments or mental treatments other than she gets upset when she thinks about the pain she has to go through. (Tr. 13).

> After reviewing the medical evidence, the ALJ found
>
>> [t]he medical evidence of record reveals that the claimant is prescribed Flexeril which is a muscle relaxant. In spite of the allegations of limiting pain, she is not prescribed any narcotic based pain relieving medication. She is taking over the counter Advil for pain. The record reveals that the claimant's allegedly disabling impairment was present prior to her alleged onset date at approximately the same level of severity. The fact that the impairment did not prevent the claimant from working at the time strongly suggests that it would not currently prevent work. The claimant resigned from her employment when her short-term disability period ended.

(Tr. 16). The ALJ properly considered the Plaintiff's mental and physical demands of her past relevant work based upon her own statements of the physical demands of the job. Based upon the Plaintiff's description and the medical record, the ALJ found the Plaintiff was able to meet the mental and physical demands of her past relevant work as a clerical secretary. He even noted that she had met those physical and mental demands under the same alleged impairments which she now claims to be disabling, but was able to continue her employment until her short term disability expired. As such, the Court finds that the ALJ properly reviewed the mental and physical demands of the Plaintiff's past work and remand is not necessary on those grounds.

### *(c )Whether the ALJ's finding the Plaintiff can perform light work is supported by substantial evidence.*

Lastly, Plaintiff argues that the ALJ incorrectly found that Plaintiff could perform light work because it is not supported by the record. (Doc. #14, p. 17). The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and, based on that determination, decide whether the plaintiff is able to return to her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. ' 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

To describe what kind of work a claimant is able to undertake, the RFC assessment typically adopts one of the following work classifications: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. Here, the ALJ concluded that Plaintiff is capable of performing light work, defined in 20 C.F.R. 404.1567(b) as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b). In concluding

that Plaintiff is able to conduct light work, the ALJ looked at all relevant evidence in the record regarding Plaintiff's past work as a clerical secretary and her current medical situation.

In making this determination, the ALJ looked at the full record, and relied significantly upon the expert opinions of the State Agency doctors who found Plaintiff able to undertake light work, as well as the medical opinion of Plaintiff's treating physician indicating that Plaintiff is capable of undertaking the tasks involved in light work under which clerical work reasonably falls. (Tr. 15-16).

As noted above, the ALJ stated that he gave the State Agency evaluations significant weight because the State Agency's assessments were based on a "thorough review of the evidence and are consistent with the evidence of record." (Tr. 16). In so finding, the ALJ gave "significant weight" to the conclusions reached by experts from the State Disability Determination Services. (Tr. 16). In relying on the State Agency doctors, the ALJ acted in accordance with SSR 96-6, which requires the ALJ to consider the State Agency experts' opinions, and to describe the weight given to those opinions in his decision. See Wainwright, 2007 WL 708971 at *2; Goberman v. Apfel, 2001 WL 267209 (M.D. Fla. Mar. 12, 2001).

Further, the ALJ cited to Dr. Ghazizadeh's medical opinion dated September 25, 2009, to support his finding that Plaintiff could conduct light work. Dr. Ghazizadeh found that Plaintiff's sensory and motor strength in both upper extremities were within normal limits, that she could walk on heels and toes, squat while holding on to something, and that she had no problems with grip strength or fine dexterity movements. (Tr. 15). A month before Dr. Ghazizadeh's physical exam, Dr. Lusk examined Plaintiff, reporting, "motor examination was 5/5, and gait and station were within normal limits. Tandem walking was done without difficulty." (Tr. 15). In concluding

that Plaintiff is capable of light work, the ALJ provided substantial evidence to support his finding.

The ALJ also reviewed the Plaintiff's daily living activities. While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). See Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination).

The ALJ observed that the Plaintiff described her daily activities as very limited. (Tr. 16). In his decision, the ALJ stated that:

> [Plaintiff] described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors [. . . .]

(Tr. 16).

The ALJ noted that the Plaintiff testified that she is able to do a number of activities that require performance of light work. (Tr. 34-35). Plaintiff stated that she was able to cook, make lunch and dinner and wash the dishes at home. (Tr. 13). Plaintiff also stated that she is able to

drive, go to the grocery store using a cart, walk, and is able to reach up to head level without pain. (Tr. 13). However she does not have much grip strength and cannot open bottles. (Tr. 13).

Thus, the ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Court concludes that the ALJ failed to explicitly state what weight he gave Dr. Ghazizadeh's opinion.  As such, the decision of the Commissioner is remanded so that the ALJ may state what weight he gave to Dr. Ghazizadeh's opinion.  The ALJ must provide articulated facts from the medical record that substantial support his decision regarding such weight.

Accordingly, it is now

**ORDERED**:  The Decision of the Commissioner Regarding the Plaintiff Amelia Cardenas is **REMANDED**.  On remand, the ALJ must explicitly state what weight he gives to Dr. Ghazizadeh's opinion and provide articulated facts from the medical record that substantial support his decision regarding such weight.

**DONE SO AND ORDERED** at Fort Myers, Florida, this 14th day of February, 2013.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record